# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LADARYL D. B., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 19-CV-70-JED-JFJ |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation.  Plaintiff Ladaryl D. B. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled.  For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

## I.      General Legal Standards and Standard of Review

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician;

the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921.  *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a).  A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process).  To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(i)-(v).  If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy.  *Williams*, 844 F.2d at 751.  "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the

2

decision is supported by substantial evidence.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Id.*  A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and ALJ's Decision

Plaintiff, then an approximately 36-year-old male, applied for Title XVI supplemental security income on May 1, 2015, and Title II disability insurance benefits on May 3, 2015, alleging a disability onset date of April 15, 2015.  R. 45, 223-227, 229-230.  Plaintiff claimed that he was unable to work due to conditions including problems with his back, knees, arms, hands, headaches, depression, anxiety, high blood pressure, swelling, and chronic fatigue.  R. 250.  Plaintiff's claims for benefits were denied initially on September 3, 2015, and on reconsideration on December 18, 2015.  R. 91-144.  Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on July 13, 2017.  R. 64-90.  The ALJ issued a decision on January 26, 2018, denying benefits and finding Plaintiff not disabled because he was able to perform other jobs existing in the national economy.  R. 45-59.  The Appeals Council denied review, and Plaintiff appealed.  R. 1-3; ECF No. 2.

The ALJ found that Plaintiff's date last insured was December 31, 2019, and that he had not engaged in substantial gainful activity since the alleged onset date of April 15, 2015.  R. 47. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative joint disease of the lumbar spine; hypertension; depression disorder; anxiety disorder; learning disorder; and left knee impairment.  *Id.*  At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments.  R. 48-50.  In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had moderate limitations in the three areas of understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace; and no limitation in the area of adapting or managing oneself.  R. 48-49.

After evaluating the objective and opinion evidence, and Plaintiff's statements, the ALJ concluded that Plaintiff has the RFC to perform a range of work as follows:

> The claimant is able to lift or carry, push or pull twenty pounds occasionally and ten pounds frequently.  The claimant can sit for six hours out of an eight-hour day, stand for two hours out of an eight-hour day, and walk for two hours out of an eight-hour day.  The claimant can sit for two hours at one time, stand for one hour at one time, and walk for one hour at one time.  The claimant can continuously use the bilateral upper extremities for reaching in all directions (including overhead); handling, fingering, feeling, pushing, and pulling.  The claimant can frequently use the bilateral lower extremities for operating foot controls.  The claimant can occasionally climb ramps or stairs, but should avoid climbing ladders, ropes, or scaffolds.  The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can tolerate frequent exposures to moving mechanical parts; unprotected heights; operating a motor vehicle; humidity and wetness; dust, odors, fumes, and pulmonary irritants; extreme cold; extreme heat; and vibrations.  The claimant can tolerate loud (heavy traffic) noise environments.  The claimant can understand, remember, and carry out simple and some complex tasks.  The claimant can tolerate superficial contact with coworkers, supervisors, and members of the public.

R. 50-51.  At step four, the ALJ found that Plaintiff was unable to perform past relevant work.  R. 57.  Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five

that Plaintiff could perform other light and sedentary work, such as Sewing Machine Operator, Electronic Assembler, and Document Preparer.   R. 58-59.   The ALJ determined the VE's testimony was inconsistent with the information contained in the Dictionary of Occupational Titles ("DOT"), but the inconsistency was reasonably explained by her professional experience.  R. 59. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy.  *Id.*  Accordingly, the ALJ concluded Plaintiff was not disabled.

### III.   Issues

Plaintiff raises three points of error in his challenge to the denial of benefits: (1) the Appeals Council improperly rejected certain relevant medical records and an opinion submitted after the ALJ's decision; (2) the ALJ failed to properly evaluate the medical and opinion evidence; and (3) the ALJ erred in his step-five conclusion that Plaintiff could perform other work.  ECF No. 15.

### IV.   Analysis

#### A.   Appeals Council Properly Rejected Plaintiff's Post-Decision Evidence

Plaintiff argues that the Appeals Council erred by declining to accept additional evidence he submitted as part of his request for review.  In denying review of Plaintiff's case, the Appeals Council noted that Plaintiff had submitted additional evidence consisting of two items.  First, Plaintiff submitted a letter from Anne May, M.D., dated April 3, 2018 (approximately two months after the ALJ decision), in which she opined that Plaintiff was "currently 100% permanently disabled as a result of his lumbar spine injury and pain as well as his bilateral knee surgeries and ongoing pain and dysfunction."  R. 38.  She stated that he "is unable to walk or sit for prolonged periods and is unable to lift/carry over 10 pounds."  *Id.*  She further stated that she "consider[s] him to be 100% permanently and totally disabled as he is unable to obtain gainful employment as a result of his disabilities."  *Id.*  Second, Plaintiff submitted treatment notes from Bristow Medical

Center, which detail a left total knee arthroplasty (replacement) procedure Plaintiff underwent on September 26-27, 2018.  R. 9-32.

The Appeals Council rejected this additional evidence, because the ALJ had decided Plaintiff's case through January 26, 2018, and the new evidence did not relate to that period.  R. 2.  The Appeals Council concluded that the new evidence "does not affect the decision about whether [Plaintiff was] disabled beginning on or before January 26, 2018," and it advised Plaintiff that he would need to re-apply for disability if he wanted the Appeals Council to consider whether he was disabled after January 26, 2018.  *Id.*  Plaintiff contends that, although the new records are dated after the ALJ's decision, they relate to knee and spine impairments Plaintiff experienced during the alleged disability period.  Therefore, Plaintiff argues the Appeals Council was required to consider it.

The Appeals Council is bound to consider evidence submitted as part of a request for review if the additional evidence is "new, material, and relates to the period on or before the date of the [ALJ's] hearing decision"; if there is a "reasonable probability that the additional evidence would change the outcome of the decision"; and if the claimant shows "good cause" for not submitting the evidence at an earlier date.  20 C.F.R. §§ 404.970(a)(5)-(b), 416.1470(a)(5)-(b).  Evidence is new "if it is not duplicative or cumulative," and it is material "if there is a reasonable possibility that it would have changed the outcome."  *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (quotations and alterations omitted).  Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to *de novo* review.  *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011).

Plaintiff contends the additional evidence relates to the period before the ALJ's decision, because it pertains to conditions that Plaintiff experienced prior to January 26, 2018.  However,

Dr. May did not address the period prior to the ALJ's decision, stating that, as of April 2018, he is "currently 100% permanently disabled" due to back and knee conditions. R. 38. It does not appear that Dr. May treated Plaintiff during the period at issue. Therefore, her opinion could not reasonably be read to cover the period prior to January 26, 2018.

As for the surgical records, Plaintiff did experience left knee pain during the relevant period, but x-rays taken in August 2016 revealed only "narrowing and spurring in the medial and lateral compartments due to mild to moderate degenerative disease" in that knee. R. 511. Plaintiff's physician at that time reviewed the x-ray results and recommended knee injections if the knee pain did not improve. R. 509-510. At his August 2017 consultative examination, Plaintiff did not complain of knee pain, and knee joint ranges of motion were observed to be normal. R. 579-581. Plaintiff underwent knee replacement surgery in September 2018, eight months after the ALJ's decision. R. 9-32. According to surgical notes from that date, radiographs revealed end-stage degenerative joint disease of the left knee with bone-on-bone articulation noted in the medial compartment, with sclerotic end-plate changes and periarticular osteophytes. R. 13. These records reflect a worsening of Plaintiff's left knee condition in 2018 that falls outside of the period at issue. *See* Hearings, Appeals and Litigation Law Manual ("HALLEX") I-3-3-6(B)(2) (explaining that additional evidence is not related to the period on or before the date of the hearing decision if it shows a "worsening of the condition or onset of a new condition after the date of the hearing decision").[1]

As a result, the Appeals Council appropriately rejected the additional evidence as not related to the period prior to the ALJ's decision. Because the undersigned finds the additional

---

[1] The HALLEX is a Social Security Administration policy manual that "conveys guiding principles, procedural guidance, and information to hearing level and Appeals Council Staff." HALLEX I-1-1-0-1.

evidence does not qualify for consideration, it plays no further role in this judicial review of the ALJ's decision.  *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).

**B.    ALJ Properly Evaluated Evidence Regarding Plaintiff's Mental and Physical Impairments**

**1.    Psychological Consultative Examination**

Plaintiff argues the ALJ committed reversible error by failing to properly evaluate the opinion of psychological consultative examiner Johna Kay Smasal, Ph.D.  R. 390-396.  The ALJ must evaluate every medical opinion in the record, considering the factors outlined in the regulations. 20 C.F.R. §§ 404.1527(c), 416.927(c).[2]  Upon review, the question for the reviewing court is whether the ALJ's decision contains specific reasons that make clear the weight assigned to the medical source opinion and the reasons for that weight.  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that the proper inquiry is whether the reviewing court "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied").

Upon examination in July 2015, Dr. Smasal observed that Plaintiff was appropriately oriented to person, place, time, and circumstance. R. 394.  Regarding attention and concentration, Plaintiff was unable to recite the months of the year backwards but could count by 6s from 0 to 60.  Dr. Smasal evaluated his attention and concentration during the interview as falling within normal limits.  Regarding memory, his immediate recall for four unrelated words was intact, although he could recall only three words after a short delay.  His remote memory for personal history was clear and unclouded.  Regarding verbal ability and academic skill, Plaintiff was able

---

[2] The relevant regulations list six factors the ALJ should consider when weighing a medical opinion: (1) the examining relationship; (2) the length, nature, and extent of the treatment relationship; (3) supportability of the opinion with relevant evidence; (4) consistency of the opinion with the record as a whole; (5) specialization of the medical source; and (6) any other factors that may support or contradict the opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c).

to understand all questions posed to him, able to follow a four-step command, and able to write and spell as expected.  However, he did not know how a butterfly and ant are similar and could not explain the meaning of a stated proverb.  Dr. Smasal evaluated his vocabulary and verbal ability as below average.  R. 395.

Regarding motor skill, Plaintiff was able to walk into the office, although it was somewhat difficult, and he was able to write a sentence.  Regarding fund of knowledge, Plaintiff could name the last three U.S. Presidents but did not know how many nickels were in $1.15.  Regarding judgment, Plaintiff explained he would "hit the floor" if he smelled smoke in a crowded theater, and he knew what to do if he found a sealed, stamped, addressed envelope.  Dr. Smasal evaluated his intellectual ability to fall within normal limits.  Plaintiff's affect also fell within normal limits, with Plaintiff making good eye contact and being cordial and cooperative.  Speech was normal with regard to rate, rhythm, tone, and volume.  Thought processes were linear and logical.  Thought content was relevant to the interview and questions posed.  Plaintiff appeared to have some insight into the problems that were the focus of the evaluation.  His judgment across the lifespan fell within normal limits, and he discussed traumatic events with relative ease.  R. 395.

In summary, Dr. Smasal opined:

Based on my limited time with [Plaintiff] it is likely he is able to perform some work-related mental activities, such as the ability to understand and remember simple instructions.  However, given his ongoing pain, depression, and anxiety symptoms, his ability to sustain concentration, persist, socially interact and adapt is likely to be compromised in a full-time work environment.

R. 395-396.  Dr. Smasal opined that, with proper treatment and medication, Plaintiff's mental health prognosis was "guarded."  R. 396.  Dr. Smasal based this prediction upon the factor that Plaintiff's "medical problems appear to be significant and may impact his ability to continue working."  *Id.*  Dr. Smasal noted diagnostic impressions of unspecified depressive disorder (rule-

out major depressive disorder), unspecified anxiety disorder, specific learning disorder (by report), and rule-out unspecified substance-related disorder.  *Id.*

In the decision, the ALJ summarized Dr. Smasal's observations and opinions, assigning her opinions "little weight."  R. 53.  The ALJ explained that Dr. Smasal's opinion was not completely consistent with her examination.  In particular, Dr. Smasal stated Plaintiff could do "simple tasks," yet she also found that Plaintiff's attention, concentration, and intellectual functioning were within normal limits.  *Id.* (citing R. 390-396).  The ALJ stated "the findings from her examination is evidence the claimant could [do] simple and some complex work."  *Id.*  The ALJ also found Dr. Smasal's opinion that Plaintiff's physical impairments were significant and may affect his ability to continue working was "outside the scope of her practice."  *Id.*  Later in the decision, the ALJ again summarized Dr. Smasal's conclusions, finding:

> Dr. Smasal stated the claimant was able to perform some work related mental such as understand and remember simple instructions (Exhibit 5F).  Given that, the above limits to simple tasks [is] appropriate.  However, he also had normal overall intellectual functioning that was within normal limits, attention and concentration was within normal limits so he could also do some complex tasks (Exhibit 5F).

R. 56.

Plaintiff argues that the ALJ made numerous errors in evaluating Dr. Smasal's examination findings and opinions.  First, Plaintiff alleges the ALJ erred by incorrectly noting Dr. Smasal found he could perform "some complex tasks," because Dr. Smasal did not make such finding.  Plaintiff misreads the ALJ's decision.  The ALJ correctly recited Dr. Smasal's opinion that Plaintiff could understand and remember simple instructions.  R. 56.  The ALJ also found, however, that Plaintiff could perform some complex tasks, in light of Dr. Smasal's mental status observations.  R. 56 (citing R. 390-396).  Therefore, the ALJ did not misrepresent Dr. Smasal's opinion.

Second, Plaintiff argues the ALJ improperly assigned "little weight" to Dr. Smasal's opinion that Plaintiff could understand and remember simple instructions. Plaintiff contends that the ALJ's reasoning was unsound, because he incorrectly found that Dr. Smasal's opinion was inconsistent with her examination. In particular, Plaintiff points out that he was unable to explain a proverb, identify similarities, or perform a math problem. R. 394-395. While the ALJ did not note those specific deficiencies, the ALJ did note Dr. Smasal's observation that Plaintiff's vocabulary and verbal ability were judged to fall below average, which encompasses the first two deficient observations. R. 53. The ALJ also noted Dr. Smasal's observation that Plaintiff's intellectual ability was judged to fall within normal limits, which encompasses the third observation. *Id.* The ALJ appropriately addressed Dr. Smasal's observations and opinions, and he properly concluded that there was some inconsistency between the two. In particular, the ALJ pointed to Dr. Smasal's finding that Plaintiff's attention and concentration were within normal limits, as well as his intellectual functioning, which provided evidence that Plaintiff could perform simple and some complex work. *Id.* Plaintiff further contends the ALJ did not acknowledge Dr. Smasal's finding that his ability to sustain concentration, persist, socially interact, and adapt was likely to be compromised in a full-time work environment. *See* R. 395-396. However, the ALJ did note this finding. *See* R. 53 (noting Dr. Smasal's opinion that, "given his ongoing pain, depression, and anxiety symptoms, [Plaintiff's] ability to sustain concentration, persist, socially interact and adapt was likely to be compromised in a full-time work environment"). The undersigned identifies no error.

Third, Plaintiff contends the ALJ erred by assigning "little weight" to Dr. Smasal's opinion while granting "great weight" to the opinions of the psychological agency reviewers, Bruce Lochner, Ph.D., and Burnard Pearce, Ph.D. Plaintiff contends the ALJ erred by stating the agency

reviewers' mental assessments that Plaintiff could perform "simple and some complex tasks" (R. 102, 114, 129, 142) was consistent with Dr. Smasal's findings. Plaintiff further contends the agency reviewers' opinions merit less weight than Dr. Smasal's, because they did not examine Plaintiff.

The ALJ concluded the agency psychological opinions were entitled to great weight because "their limitations are consistent with findings at the consultative examination." R. 57. Specifically, the ALJ noted "[t]he consultative examination found he had normal overall intellectual functioning that was within normal limits and attention and concentration was within normal limits." *Id.* (citing R. 390-396). Contrary to Plaintiff's argument, the ALJ properly found the agency reviewers' opinions were consistent with Dr. Smasal's examination findings, even though Dr. Smasal's opinion was somewhat more limited. The ALJ adequately explained his reasons for adopting the agency reviewers' opinions and departing from Dr. Smasal's opinion. R. 53, 57. To the extent Plaintiff argues the ALJ was required to address every regulatory factor in reaching this conclusion, Plaintiff is incorrect. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (ALJ is not required to "apply expressly" each relevant factor in weighing medical opinion).

As for Plaintiff's argument that it was improper to adopt the agency reviewers' opinions because they did not examine him, the regulations provide that ALJs "are not required to adopt any prior administrative medical findings but they must consider this evidence according to [the relevant regulations], as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2008)

12

(a "non-examining physician's opinion is an acceptable medical source, which the ALJ [is] entitled to consider").  Accordingly, Plaintiff's arguments fail.

Fourth, Plaintiff argues the ALJ improperly found that Dr. Smasal's opinion regarding the significance of Plaintiff's physical impairments was "outside the scope of her practice."  R. 53. *See* R. 396.  Plaintiff argues Dr. Smasal's opinion in this regard is "reasonable," because Plaintiff's pain can affect his mental functioning.  ECF No. 15 at 9.  Plaintiff's argument fails.  While Dr. Smasal's opinion may be "reasonable," it is nonetheless outside the scope of a psychologist's practice to opine on medical issues.  *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").  The undersigned identifies no error.

### 2.    Disability Investigations Unit Report

Plaintiff contends the ALJ improperly relied on a report from the Office of the Attorney General Cooperative Disability Investigations Unit, dated December 2015.  R. 436-443.  Plaintiff alleges the ALJ's reliance on this report was improper, because Plaintiff's interview with the Disability Investigations Unit lasted only 35 minutes, and because the ALJ gave no weight to the fact that Plaintiff stood several times during the interview.  *See* R. 56, 440.  Plaintiff also points out that the medical agency reviewers on reconsideration, David Bailey, M.D., and Dr. Pearce, reviewed this evidence and found the accompanying video showed "no difficulty moving or exertion."  R. 126, 139.  At the hearing, Plaintiff's counsel objected to the probative value of this report, although he did not object to its admissibility.  R. 67.

Plaintiff's arguments are not persuasive.  The ALJ accurately summarized observations from the interview, including that Plaintiff sat on the couch, walked without any assistive device,

and navigated steps.  R. 57 (citing R. 440).[3]  This exhibit was admitted into the record, and the ALJ was entitled to consider it in determining the RFC.  To the extent Plaintiff argues the ALJ relied on the agency reviewers' findings regarding the report and accompanying video, the ALJ actually assigned "little weight" to the medical agency reviewers' opinions.  R. 57.  While the ALJ did assign "great weight" to the psychological reviewers' opinions, the ALJ assigned this weight because the opinions were consistent with the consultative examiner's findings, not because they addressed the interview report.  R. 57.  The undersigned identifies no error.

### 3.    Physical Therapy Records

Plaintiff argues the ALJ erred by failing to consider findings and opinions from Plaintiff's physical therapists, Samone Malloy and Susan Martin.  Plaintiff underwent physical therapy sessions from September 2015 to November 2015 for his back pain.  R. 400-435.  Plaintiff points specifically to the initial physical assessment by Ms. Malloy on September 10, 2015, which included findings of mild hypertrophy in the lumbar paraspinals, positive findings for disc involvement, mild weakness in the hips, quadriceps, and hamstrings, and diminished range of motion of the lumbar spine.  R. 435.  Plaintiff also points to observations by Ms. Martin on November 6, 2015, that Plaintiff still had reduced strengths in the hips and lower extremities, and 7/10 pain level, after twelve physical therapy sessions.  R. 434.

Plaintiff's arguments are not persuasive.  The ALJ discussed Plaintiff's physical therapy records, accurately noting that physical therapy gave him some pain relief, but that he had not met all goals as of his last session.  R. 54 (citing R. 400-412, 416-434).  He accurately summarized Ms. Martin's notes dated November 6, 2015.  *Id.*  While the ALJ did not expressly reproduce Ms. Malloy's notes, he clearly considered the results of the physical therapy sessions, and Plaintiff

---

[3] The ALJ mislabeled this exhibit as Exhibit 8F.  The report is actually labeled as Exhibit 7F.

points to nothing in Ms. Malloy's notes that would contradict the RFC or otherwise require express consideration. *See Clifton v. Chater*, 79 F.3d1007, 1010 (10th Cir. 1996) (ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects") (citation omitted).

Plaintiff contends Ms. Malloy's and Ms. Martin's observation notes constitute "opinions" that required specific weighing. However, Plaintiff points to no part of their notes that constitute more than clinical observations and Plaintiff's subjective reports of pain and weakness. The undersigned rejects Plaintiff's argument that their notes required weighing as medical source opinions.

### 4. Evidence of Back and Knee Pain

Plaintiff contends the ALJ miscast the evidence supporting his allegations of pain in his back and left knee.[4] In support, Plaintiff alleges the ALJ ignored evidence of pain while noting he "was getting 70%-80% [pain] relief from his epidural steroid injections." R. 56-57 (citing R. 454). Plaintiff points out that he has variously reported back pain levels of 5/10, 7/10, 8/10, and 9/10 (434, 444, 450, 452, 456, 458, 460, 463), and that he had to continue taking Norco even with injections, which did not last for longer than about a month (R. 444, 450, 452, 456, 458, 460). Plaintiff argues these pain levels, accompanied by sleep disturbance due to pain, indicate he cannot perform the sitting, standing, or walking required by even sedentary work.[5]

---

[4] Plaintiff raises this argument under the third allegation of error. ECF No. 15 at 12-13. The undersigned finds it is more appropriately addressed here.

[5] Plaintiff also contends that Dr. May's April 2018 opinion and his September 2018 knee surgery support the need for greater RFC limitations accommodating his back and knee pain. *See* R. 9-32, 38. However, as explained above in Part IV.A, the Appeals Council properly rejected this evidence, and it cannot be considered here on judicial review.

Plaintiff's argument is not persuasive.  Regarding Plaintiff's knee, Plaintiff does not identify any records pertaining to his knee pain that would suggest the ALJ's analysis was improper.  Regarding back pain, the ALJ accurately reported the pain relief he experienced from an epidural steroid injection, and he noted Plaintiff's treatment, clinical findings, and observations related to his back pain.  *See* R. 56-57 (citing R. 397-486, 578-592).  Moreover, the ALJ's physical RFC corresponds to the physical limitations indicated by consultative examiner S. Krishnamurthi, M.D., and Plaintiff does not allege Dr. Krishnamurthi's limitations were inappropriate.  *See* R. 57 (citing R. 579-592).  In addition, Plaintiff reported in December 2016 that his back pain averaged at 4/10 with medication, that he had achieved 100% relief from his back pain after an epidural steroid injection for nearly a month before the pain returned, and that he believed the combination of Norco and injections provided him with relief.  R. 444.[6]

Plaintiff also alleges the ALJ failed to address the effect of his sleep disturbance due to back pain.  *See* R. 78-80, 258, 268, 460.  However, the ALJ addressed the functional impairments resulting from Plaintiff's back pain generally, and Plaintiff's sleep disturbance is a result of that pain.  Plaintiff does not identify any work-related functional impairments resulting from his difficulty sleeping.  In sum, Plaintiff fails to identify a legitimate legal error or lack of substantial evidence supporting the ALJ's RFC determination.  Plaintiff is simply inviting the court to re-weigh the evidence, which is not permitted.  *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (the court "may not displace the agency's choice between two

---

[6] To the extent Plaintiff is raising a consistency argument, the argument is insufficiently developed for review.  *See Femedeer v. Haun*, 227 F.3d 1244, 1255 (10th Cir. 2000) ("Perfunctory complaints that fail to frame and develop an issue are not sufficient to invoke appellate review.") (quotations and brackets omitted)).

fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo") (quotation and alterations omitted).

### C.    ALJ's Step-Five Findings Were Legally Sound

Plaintiff contends the ALJ's step-five determination was legally flawed for three reasons.[7]

#### 1.    Reasoning Development

Plaintiff argues a conflict exists between Dr. Smasal's opinion that Plaintiff could "understand and remember simple instructions," and the job of Document Preparer, because the DOT assigns it a reasoning level of three. *See* DOT #249.587-018 (Document Preparer).

The reasoning level component is a classification under the General Educational Development ("GED") scale.  DOT App'x C, § III, 1991 WL 688702.  The GED scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development. *Id.*  The "Reasoning Development" division of the GED scale is divided into six levels.  A job with a reasoning level of three requires the worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

While the Tenth Circuit has stated that an RFC limitation to "simple and routine" work tasks "seems inconsistent with the demands of level-three reasoning" *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), Plaintiff's RFC here was not limited to simple work.  Rather, the ALJ rejected Dr. Smasal's "simple instructions" limitation because her observations provided evidence that Plaintiff could do "simple and some complex work."  R. 53.  Accordingly, the RFC

---

[7] In this section of the opening brief, Plaintiff repeats his arguments regarding his mental limitations and his combined impairments, arguing that the hypothetical question to the VE should have reflected additional limitations to account for those conditions.  ECF No. 15 at 11-12.  As explained above in Part IV.B, the undersigned identifies no error in evaluating the evidence or determining the RFC regarding those conditions.  As a result, the undersigned correspondingly identifies no error in the hypothetical question to the VE relating to those conditions.

states that Plaintiff "can understand, remember, and carry out simple and some complex tasks." R. 51. As explained above, the ALJ properly assessed Dr. Smasal's findings and opinions, and Plaintiff does not contend that his RFC conflicts with level-three reasoning. Accordingly, Plaintiff's argument fails.

### 2. Mathematical Development

Plaintiff argues that all three of the step-five jobs are beyond his mental capabilities, because he has a "severe" learning disorder and received special education services at school. *See* R. 47, 393. In particular, Plaintiff argues his difficulties with math, which Dr. Smasal documented at the consultative exam, demonstrate that he cannot perform the level-one mathematics required by the three jobs. *See* R. 395 (Plaintiff incorrectly stated six nickels were in $1.15); DOT 249.587-018 (Document Preparer), 726.687-046 (Electronic Assembler), 786.685-030 (Sewing Machine Operator).

The Mathematical Development component is another classification under the GED scale, and it is divided into six levels, with level one being the least complex. DOT App'x C, § III, 1991 WL 688702. A job with a mathematical development level of one requires the worker to "[a]dd and subtract two-digit numbers," "[m]ultiply and divide 10's and 100's by 2, 3, 4, 5," "[p]erform the four basic arithmetic operations with coins as parts of a dollar," and "[p]erform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound." *Id.* Here, although Plaintiff demonstrated inability to correctly state the number of nickels in $1.15 at the consultative exam, Dr. Smasal nonetheless concluded his intellectual ability fell within normal limits. R. 395. In addition, the ALJ did not place any specific RFC limits on the ability to perform mathematical tasks, despite finding Plaintiff had a severe learning disorder at step two. Plaintiff points to no authority in support of his argument that the RFC is inconsistent with the ability to perform level-one mathematical development tasks. The undersigned identifies no error.

### 3.      Significant Number of Jobs

Plaintiff contends that, together or separately, the jobs the VE identified do not constitute a significant number of jobs in the national economy.  As explained above, the undersigned finds no conflict with any position identified by the VE, making an analysis of the separate positions unnecessary.  As for the three jobs combined, which totaled 92,000 national jobs, the ALJ himself found that this number constituted a "significant" number of jobs.  R. 59.[8]

There is no magic number that qualifies as a "significant number" of jobs.  *See Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).  Rather, the evaluation of numerical significance, which "entails many fact-specific considerations requiring individualized evaluation," "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation."  *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting *Trimiar*, 966 F.2d at 1330) (quotation marks omitted).

Plaintiff argues the 92,000 available jobs in the national economy is not "significant" as a matter of law and remand is required.  However, the *ALJ* made the initial determination that 92,000 was a significant number of jobs in this case, and the court must typically defer to the ALJ's common sense in determining numerical significance based on the particular facts of the case. *Allen*, 357 F.3d at 1144.  In support of his argument for remand, Plaintiff cites *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009), in which the Tenth Circuit concluded in the first instance that 1.34 million national jobs was significant as a matter of law.  Plaintiff additionally cites *Stokes*

---

[8] Plaintiff's argument raises a different issue than is usually raised regarding "significant numbers."  Typically, the issue presented requires the *court* to decide in the first instance whether a given number of jobs is "significant" as a matter of law, such that no reasonable factfinder could find otherwise. *See, e.g., Cain v. Berryhill*, No. 16-CV-640-GKF-FHM, 2018 WL 1247876, at *5 (N.D. Okla. Mar. 9, 2018) (where ALJ did not explicitly consider numerical significance of 15,900 jobs, court considered whether it was appropriate for it to supply missing dispositive finding under rubric of harmless error).  Here, by contrast, Plaintiff is asking the court to conclude that the *ALJ's* determination that 92,000 jobs is "significant" constitutes legal error.  ECF No. 15 at 14-15.

*v. Astrue*, 274 F. App'x 675, 685 (10th Cir. 2008), which concluded that 152,000 national jobs was significant as a matter of law, and *Norris v. Barnhart*, 197 F. App'x 771, 777 (10th Cir. 2006), which declined to find in the first instance that 190,000-210,000 national jobs was significant as a matter of law.   However, *Raymond* and the other unpublished authority Plaintiff cites is distinguishable.   In this case, a court need not supply a missing finding regarding numerical significance and can instead defer to the ALJ's finding that 92,000 is "significant."   The undersigned therefore finds no grounds for reversal.  *See Lynn v. Colvin*, No. 13-CV-596-GKF-TLW, 2015 WL 1000217, at *5-6 (N.D. Okla. Mar. 6, 2015) (affirming ALJ's finding that 69,700 was a significant number of national jobs).

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation.  Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by July 15, 2020.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to.   The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1).  The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions."  *United States v.*

*One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 1st day of July, 2020.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**