UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LADARYL D. B., SR., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-CV-0070-CVE-JFJ |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Before the Court is the report and recommendation (Dkt. # 19) of United States Magistrate Judge Jodi F. Jayne, recommending that the Court affirm the Commissioner's denial of plaintiff's application for benefits.

I.

Plaintiff, who was about 36-years old at the time of application, applied for Title XVI supplemental security income on May 1, 2015 and Title II disability insurance benefits on May 3, 2015, alleging a disability onset date of April 15, 2015. Dkt. # 10, at 91-93. Plaintiff reported that he was unable to work due to conditions including problems with his back, knees, arms, hands, headaches, depression, anxiety, high blood pressure, swelling, and chronic fatigue. Id. at 250. The Commissioner initially denied plaintiff's claims for benefits on September 3, 2015, and on reconsideration on December 18, 2015. See id. at 91-144. Plaintiff requested a hearing before an administrative law judge (ALJ), id. at 165, and the ALJ conducted a hearing on July 13, 2017, see

---

[1] Effective July 11, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

id. at 64-90. In a decision issued January 26, 2018, the ALJ found plaintiff not disabled because he was able to perform other jobs existing in significant numbers in the national economy. Id. at 45-63. The Appeals Council denied review, and plaintiff filed the instant action seeking judicial review. Id. at 1-3; Dkt. # 2.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. Fed. R. Civ. P. 72(b). However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. 28 U.S.C. § 636(b)(1); Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

A party's right to de novo review is subject to the Tenth Circuit's "firm-waiver rule," which holds that "a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." United States v. 2121 E. 30th St., 73 F.3d 1057, 1059–1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." Id. at 1060. The Tenth Circuit has applied the firm-waiver rule where the plaintiff's objection to the report and recommendation merely asserted a series of errors without explaining why the magistrate's reasoning was erroneous. See Zumwalt v. Astrue, 220 F. App'x 770, 777 (10th Cir. 2007).

## III.

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and therefore entitled to benefits. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of establishing a prima facie case of disability at steps one through four." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005)). "Step one requires the claimant to demonstrate 'that he is not presently engaged in substantial gainful activity.'" Id. (quoting Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir.2005)). "At step two, the claimant must show 'that he has a medically severe impairment or combination of impairments.'" Id. (quoting Grogan, 399 F.3d at 1261). "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits." Id. (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.1988)). "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show 'that the impairment or combination of impairments prevents him from performing his past work.'" Id. (quoting Grogan, 399 F.3d at 1261). If the claimant meets this burden, the analysis continues to step five, where the burden of proof shifts to the Commissioner to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given the claimant's age, education, and work experience. Id. (citing Hackett, 395 F.3d at 1171).

In reviewing the ALJ's decision, the Court may not reweigh the evidence or substitute its judgment for that of the ALJ; the Court's task is to review the record to determine if the ALJ applied the correct legal standard and if her decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" O'Dell v. Shalala, 44

F.3d 855, 858 (10th Cir. 1994) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

## IV.

The ALJ found that plaintiff was insured through December 31, 2019 and had not engaged in substantial gainful activity since April 15, 2015, the alleged onset of his disability. Dkt. # 10, at 47. At step two, the ALJ found that plaintiff had the following severe impairments: degenerative joint disease of the lumbar spine, hypertension, depression disorder, anxiety disorder, learning disorder, and left knee impairment. Id. Additionally, the ALJ found plaintiff to have a non-severe impairment of gout. Id. at 48. At step three, the ALJ found that plaintiff had no impairment or combination of impairments that met the severity of a listed impairment. Id. at 48-49. In doing so, the ALJ considered mental disorders listings 12.04 (depressive, bipolar, and related disorders), 12.05 (intellectual disorder), and 12.06 (anxiety and obsessive compulsive disorders), but found that the plaintiff's impairments did not meet or medically equal the criteria. In assessing the "paragraph B" criteria, the ALJ found that plaintiff had "moderate" limitations in the three areas of understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace; and no limitation in the area of adapting or managing oneself. Id.

At step four, the ALJ summarized the evidence in the record and concluded that plaintiff had the following RFC:

4

> The claimant is able to lift or carry, push or pull twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours out of an eight-hour day, stand for two hours out of an eight-hour day, and walk for two hours out of an eight-hour day. The claimant can sit for two hours at one time, stand for one hour at one time, and walk for one hour at one time. The claimant can continuously use the bilateral upper extremities for reaching in all directions (including overhead); handling, fingering, feeling, pushing, and pulling. The claimant can frequently use the bilateral lower extremities for operating foot controls. The claimant can occasionally climb ramps or stairs, but should avoid climbing ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can tolerate frequent exposures to moving mechanical parts; unprotected heights; operating a motor vehicle; humidity and wetness; dust, odors, fumes, and pulmonary irritants; extreme cold; extreme heat; and vibrations. The claimant can tolerate loud (heavy traffic) noise environments. The claimant can understand, remember, and carry out simple and some complex tasks. The claimant can tolerate superficial contact with coworkers, supervisors, and members of the public.

Id. at 50-51. Based on the testimony of a vocational expert, the ALJ concluded that plaintiff's RFC rendered him unable to perform past relevant work. Id. at 57.

At step five, however, the ALJ found that plaintiff could perform other work. In doing so, the ALJ cited the vocational expert, who testified that plaintiff could perform the work of a sewing machine operator, electronic assembler, or document preparer. Id. at 58-59. Citing the vocational expert's testimony that there were 92,000 such jobs in the national economy (32,000, 20,000, and 40,000, respectively), the ALJ found that plaintiff was capable of transitioning to other work that existed in significant numbers in the national economy. Id. Accordingly, the ALJ determined that plaintiff was not disabled. Id. at 59.

## V.

Plaintiff argues (1) that the Appeals Council improperly rejected relevant medical evidence submitted after the ALJ's decision; (2) that the ALJ did not properly evaluate evidence regarding

5

plaintiff's physical and mental impairments in determining plaintiff's RFC; and (3) that the ALJ erred in his step-five conclusion that plaintiff can perform other work. Dkt. # 20.[2]

A.      **Appeals Council Evidence**

Plaintiff argues that the Appeals Council erred when it declined to review the ALJ's decision based on additional evidence he submitted with his review request. See Dkt. # 20, at 1-2. The Appeals Council is bound to consider evidence submitted as part of a request for review if the additional evidence is "new, material, and relates to the period on or before the date of the [ALJ's] hearing decision"; if there is a "reasonable probability that the additional evidence would change the outcome of the decision"; and if the claimant shows "good cause" for not submitting the evidence at an earlier date. 20 C.F.R. §§ 404.970(a)(5)-(b), 416.1470(a)(5)-(b). Evidence is new "if it is not duplicative or cumulative," and it is material "if there is a reasonable possibility that it would have changed the outcome." Threet v. Barnhart, 353 F.3d 1185, 1191 (10th Cir. 2003) (quotations and alterations omitted). Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to de novo review. Krauser v. Astrue, 638 F.3d 1324, 1328 (10th Cir. 2011).

Here, plaintiff submitted two pieces of evidence in support of his review request. One consisted of a letter from Anne May, M.D., dated April 3, 2018. Dkt. # 10 at 38. In it, Dr. May stated as follows:

> Mr. Barnes is currently 100% permanently disabled as a result of his lumbar spine injury and pain as well as his bilateral knee surgeries and ongoing pain and dysfunction. He is unable to walk or sit for prolonged periods and is unable to lift/carry over 10 pounds. His background is manual labor. Considering his education, work history and experience I consider him to be 100% permanently and

---

[2] Plaintiff divides his arguments under the headings of "Appeals Council Errors," "Opinion Evidence," and "RFC and Step Five Errors." Although the Court organizes its analysis differently, the Court addresses all of the arguments that he has properly preserved in his objection.

>totally disabled as he is unable to obtain gainful employment as a result of his disabilities.

Id. The other consisted of notes detailing plaintiff's knee replacement surgery at Bristow Medical Center on September 26-27, 2018. Dkt. # 10 at 9-32.

In declining to review the ALJ's decision, the Appeals Council noted that the ALJ's determination decided plaintiff's case through January 26, 2018, but that the additional evidence did not relate to that period. Id. at 2.  Because the evidence did "not affect the decision about whether [plaintiff was] disabled beginning on or before January 26, 2018," the plaintiff would have to file a new disability application. Id. Plaintiff contends that this conclusion was in error because the documents, though created after the ALJ's decision, are evidence that his impairments were more severe than the ALJ believed during the relevant period. This argument is not supported by the evidence.

Dr. May's letter did not address the period prior to the ALJ's decision. She stated that plaintiff was "currently" disabled as of the writing of her letter. Id. at 38. Given that she does not appear to have treated or examined plaintiff during the period at issue, her letter cannot reasonably be read as opining on the status of his impairments during the relevant period.

As for the hospital records, they do nothing more than show that plaintiff's knee impairment worsened after the ALJ's decision. The record is mixed regarding the severity of plaintiff's knee problems during the period in question. In August 2016, plaintiff visited St. John Clinic complaining of knee pain, and an examination showed abnormal gait, clicking and popping with movement, and decreased range of motion. Id. at 509. After X-rays revealed "mild to moderate degenerative disease" in the left knee, his doctor prescribed an oral steroid and instructed plaintiff to return for possible knee injections if the knee did not show improvement. Id. 510-11. Records show he made several subsequent visits to the physician, but none of them were for knee

pain. See id. at 487-507. A year later, in August 2017, plaintiff visited Dr. Subramaniam Krishnamurthi for a consultative examination related to his disability claim. During the visit, plaintiff did not complaint of knee pain, and the range of motion in his knee appeared to be normal. Id. at 579-81. It was not until his surgery in late September of 2018 that imaging showed plaintiff to have "end-stage degenerative joint disease with bone-on-bone articulation noted in the medial compartment" and "sclerotic end-plate changes . . . with periarticular osteophytes." Id. at 13. As this evidence relates to a diagnosis plaintiff received a full eight months after the ALJ's decision, the hospital notes merely reflect a worsening of plaintiff's knee condition in 2018, outside of the period at issue. The Appeals Council was therefore correct when it declined to review the ALJ's decision based on the new evidence. See Hearings, Appeals & Litigation Law Manual (HALLEX) § I-3-3-6, 1993 WL 643129 (explaining that additional evidence does not relate to the period on or before the hearing decision if the evidence shows "a worsening of the condition or onset of a new condition after the date of the hearing decision").

B.   **Evaluation of Plaintiff's Impairments**

Broadly stated, plaintiff makes the following four arguments regarding the ALJ's RFC evaluation: (1) the ALJ failed to properly evaluate the opinion of a consulting psychologist; (2) the ALJ failed to give weight to the opinions of a physical therapy team who treated his back pain; (3) the ALJ improperly considered a report from the Office of the Attorney General Cooperative Disability Investigations Unit; and (4) the ALJ did not properly consider plaintiff's knee and back pain. These arguments are unavailing for the reasons explained below.

1.   **Consulting Psychologist's Opinion**

Plaintiff argues the ALJ failed to properly evaluate the opinions of Johna Smasal, Ph. D., a consulting psychologist. Dkt. # 20, 2-4. In determining an individual's RFC, the ALJ must

evaluate every medical opinion in the record, considering the factors outlined in the regulations. 20 C.F.R. §§ 404.1527(c), 416.927(c); see also SSR 96-8p, 1996 WL 374184; SSR 96-5p, 1996 WL 374183. If the ALJ's RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184, at *7.

Dr. Smasal performed a psychological consultative examination of the plaintiff in July 2015. Dkt. # 10, at 391-96. During the exam, she evaluated various aspects of plaintiff's cognitive function. With respect to "orientation," she found plaintiff "was appropriately oriented to person, place, time and circumstance," and "he could identify the approximate location of the office." Id. at 394. With respect to "attention and concentration," plaintiff was unable to recite the months of the year in reverse order, but he could count by sixes from zero to sixty. Id. With respect to "memory," plaintiff's ability to recall four unrelated words was intact, but he could not recall three words after a short delay. Id. His remote memory regarding his personal history was clear and unclouded. Regarding "verbal ability and academic skill," plaintiff showed "good understanding of all questions posed to him during the course of evaluation," "was able to follow a four-step command," and "was able to write and spell within expected levels"; however, he "could not explain how a butterfly and an ant are similar." Id. at 394-95. He was also unable to explain the meaning of the proverb "The squeaky wheel gets the grease." Id. at 395. Overall, his vocabulary and verbal ability was "below average." Id. Regarding "gross and fine motor-skill," plaintiff was able to walk, though it "was somewhat difficult for him." Id. His fine-motor function for writing and copying complex figures fell within normal limits. Regarding "fund of knowledge," Dr. Smasal noted that he could name the last three U.S. presidents, but he incorrectly stated that there are six nickels in $1.15 (there are twenty-three). Id. Regarding "judgment," plaintiff said he would "hit the floor" if he smelled smoke in a crowded theater, but he correctly identified the

9

proper course of action to take if he found an envelope that was sealed, stamped, and addressed. Id. Despite these limitations, she found that, overall, his intellectual ability fell "within normal limits." Id.

> Regarding his ability to work, she opined as follows:
>
> Based on my limited time with [plaintiff] it is likely he is able to perform some work-related mental activities, such as the ability to understand and remember simple instructions. However, given his ongoing pain, depression, and anxiety symptoms, his ability to sustain concentration, persist, socially interact and adapt is likely to be compromised in a full-time work environment.

Id. at 395-96. She judged plaintiff's prognosis to be "guarded" because his "medical problems appear to be significant and may impact his ability to continue working." Id. at 396.

In reaching his RFC determination, the ALJ summarized Dr. Smasal's report, including the findings listed above, but ultimately gave her opinion "little weight." Id. at 53. In doing so, he noted that Dr. Smasal based her prognosis in part on the effect of plaintiff's physical impairments on his ability to continue working, an opinion the ALJ found to be outside the scope of her practice. The ALJ further reasoned that Dr. Smasal's ultimate opinion was not entirely consistent with her own observations. He reasoned that, although Dr. Smasal said plaintiff could only do "simple tasks," she had also found his attention and concentration, and intellectual functioning to be within normal limits. Id. at 53. Given that plaintiff's abilities in these areas were within normal limits, the ALJ concluded that plaintiff was also capable of doing some complex tasks, a conclusion in accord with the state-agency psychologists. Id. at 53, 56-57.

The plaintiff contends that this analysis was insufficient, but his arguments are not persuasive. In reaching his conclusion that plaintiff was capable of completing "some complex tasks," the ALJ accurately summarized Dr. Smasal's observations and gave a reasoned explanation for his decision to give her opinion little weight. Id. at 56. Moreover, his conclusion was supported by the opinions of the state agency reviewers. Although the state-agency psychologists did not

examine plaintiff, the ALJ explained that their opinions were nevertheless due "great weight" because they were consistent with the function-by-function observations that Dr. Smasal made in her report. Id. at 57. On the whole, the Court finds no reversible error regarding the ALJ's evaluation of Dr. Smasal's report or his explanation for the weight he gave her opinion.

    2.    **Physical Therapists' "Opinions"**

Plaintiff argues the ALJ also failed to adequately consider findings and opinions from his physical therapists, Samone Malloy, DPT, and Susan Martin, who treated him for back pain from September 2015 to November 2015. Dkt. # 15, at 10-11; Dkt. # 20, at 4-5. Specifically, he points to notes from a September 10, 2015, exam in which Dr. Malloy found "mild hypertrophy . . . in the lumbar paraspinals," signs of disc involvement, mild weakness in the hips, legs, and hamstrings, and limited range of motion in the lumbar spine. Dkt. # 10, at 435. Plaintiff also cites a November 6, 2015, letter from Martin to plaintiff's primary care physician. In it, Ms. Martin stated that plaintiff had made progress in the twelve sessions he had completed, but he still had some weakness in his quads and continued to report low-back pain at 7/10. Id. at 434. Plaintiff argues that the ALJ failed to specify the weight he assigned to their reports and otherwise failed to evaluate their "opinions" as required under the Commissioner's rules.

Plaintiff's argument is unavailing, primarily because he mischaracterizes Malloy's and Martin's statements as "opinions" that the ALJ was obliged to assign a particular weight. The Commissioner defines medical opinions as "statements from acceptable medical sources that reflect <u>judgments</u> about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1) (emphasis added). Here, nothing in the documents cited by plaintiff reflect Dr. Malloy's or Ms. Martin's "judgments." Their statements

11

are merely a combination of their clinical observations and plaintiff's self-reported symptoms. Accordingly, the ALJ was not required to assign them a particular weight when evaluating plaintiff's RFC. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1164 (10th Cir. 2012) (holding that source's narrative of plaintiff's reported symptoms was not an opinion that ALJ was required to weigh).

Moreover, to the extent the documents could be construed as reflecting Dr. Malloy's and Martin's "opinions," the ALJ's failure to assign their findings a particular weight would not rise to the level of reversible error. When an ALJ discusses a medical opinion but fails to expressly weigh it, the error is harmless when the RFC adopted by the ALJ is generally consistent with the opinion, and "[t]here is no reason to believe that a further analysis or weighing of the opinion would advance [the plaintiff's] claim of disability." Id. at 1163. That is the case here. Nothing that could conceivably be construed as reflecting the opinions of Dr. Malloy or Ms. Martin, as opposed to plaintiff's self-reported symptoms, conflicts with the ALJ's RFC finding. Consequently, to the extent the ALJ erred by not expressly weighing their opinions, the error was harmless.

   **3.**  **Cooperative Disability Investigations Report**

During the adjudication of plaintiff's disability claim, his case was referred to the state's Cooperative Disability Investigation's Unit, which recorded an interview with him at his home in Tulsa, Oklahoma. Dkt. # 10, at 436-43. The ensuing report, which was generally unfavorable to plaintiff, was among the records considered by state-agency reviewers at the reconsideration phase of the adjudication process. In their determination, they found plaintiff's allegations were "not consistent with video evidence which shows no difficulty moving or exertion." Id. at 126, 139. Although the ALJ did not cite this portion of the reviewers' decision, he did cite the CDI report

itself, noting that, although plaintiff complained of knee and back pain, investigators observed that plaintiff could sit on the couch, walk without assistance, and navigate steps. Id. at 57.[3]

Plaintiff argues that the ALJ erred by citing the report for the proposition that plaintiff was able to sit without also acknowledging that the investigators noted that plaintiff got up several times during the interview.[4] Dkt. # 15, at 10; Dkt. # 20, at 5. This argument also fails. The ALJ accurately summarized the observations of the investigators, and he was entitled to consider their report as part of the record when formulating plaintiff's RFC. Plaintiff's argument to the contrary is merely an invitation to reweigh the evidence, which is beyond the Court's purview when reviewing an ALJ's disability determination. Hackett, 395 F.3d at 1172.

### 4. Evidence of Back and Knee Pain

Plaintiff argues that the ALJ failed to properly address pain caused by his back and knee impairments. Dkt. # 20, at 5-6. These arguments have no merit.

In response to Judge Jayne's statement that plaintiff failed to identify in his opening brief "any records pertaining to his knee pain that would suggest the ALJ's analysis was improper," plaintiff merely cites to a dozen pages in the record without explaining how any of those pages support his position. See id. This is insufficient to preserve his argument on the issue. And even if it were sufficient, the Court has reviewed the cited pages and concurs with Judge Jayne. Although plaintiff did see a doctor for knee pain in August 2016, plaintiff did not return for a follow up

---

[3] The ALJ's decision gives the wrong exhibit number for the report. It appears in the record as Exhibit 7F.

[4] In his opening brief, plaintiff initially argued that the ALJ also erred by giving "great weight" to the state-agency reviewers. Although Judge Jayne explained in her report and recommendation why this argument fails, plaintiff does not address her reasoning in his objection. Accordingly, the Court views the argument as waived. See Zumwalt, 220 F. App'x at 777 (holding that a plaintiff who failed to address the magistrate judge's reasoning in her objection had waived her right to de novo review).

despite the doctor's instruction to return if the pain persisted. See Dkt. # 10 at 487-574. Moreover, the symptoms appear to have dissipated by August 2018, as plaintiff did not mention his knee pain to Dr. Krishnamurthi, the consulting physician. See Dkt. # 10 at 580. Furthermore, the ALJ's RFC corresponds to the physical limitations indicated by Dr. Krishnamurthi, but plaintiff has not argued that Dr. Krishnamurthi's assessment was in any way erroneous. See id. at 57 (citing id. at 579-92).

Plaintiff's arguments regarding his back pain are similarly underdeveloped. The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his complaints regarding the intensity, persistence, and limiting effects of the symptoms was not entirely consistent with the record. Id. at 56. In explaining this conclusion, the ALJ noted that plaintiff's pain management records showed good range of motion in his lumbar spine, that he was neurologically grossly intact, and that walked with a non-antalgic gait. Id. at 56 (citing id. at 444). The ALJ also noted that plaintiff reported to his physicians that his medication was effective in controlling his back pain. Id. Plaintiff has not explained why this was insufficient.

Finally, plaintiff references the effect of his pain has had on the quality of his sleep, but the argument is purely conclusive. See Dkt. # 20, at 6. Given that the ALJ addressed the functional impairments resulting from plaintiff's back pain generally, and plaintiff has not identified any functional limitations resulting from the pain's effect on his sleep, the Court finds no reversible error on this point.

**C.      Step-Five Findings**

Plaintiff makes several arguments regarding the ALJ's findings at step five. None of them is persuasive.

First, plaintiff argues that the ALJ's failure to properly evaluate his RFC caused the ALJ to pose a faulty hypothetical to a vocational expert. Id. As explained above, however, the Court finds no errors regarding the ALJ's evaluation of plaintiff's RFC. Accordingly, the Court finds no error in the hypothetical posed by the ALJ.

Second, plaintiff argues that "[t]he ALJ's finding that [plaintiff] can do 'simple and some complex work' directly contradicts a finding he can perform work with a reasoning level of three." Id. This is simply wrong. Reasoning Development is one component of General Educational Development (GED), a metric used by the Dictionary of Occupational Titles (DOT) when describing the abilities workers must have to be successful in a particular occupation. DOT App'x C, § III, 1991 WL 688702. The DOT scores Reasoning Development on six levels of ability, with level six being the most demanding. A job with a reasoning level of three requires a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." Id.

Although the Tenth Circuit has held there to be an apparent conflict between an RFC that limits a person to "simple and routine" work tasks and a job that requires level-three reasoning, Hackett, 395 F.3d at 1176, plaintiff's RFC did not include a "simple and routine" limitation. On the contrary, based on Dr. Smasal's cognitive-function findings and the opinions of the reviewing psychologists, the ALJ found that plaintiff could do "some complex tasks." Dkt. # 10, at 51, 56-57. Plaintiff points to no authority—and the Court could not find none—supporting the proposition that a "some complex tasks" limitation conflicts with level-three reasoning. Consequently, because the ALJ adequately explained his reasoning on this issue and his RFC finding is supported by substantial evidence, plaintiff has shown no error.

Third, plaintiff contends that he lacks the mathematical ability required to do the jobs of electronic assembler and sewing machine operator, citing as evidence the ALJ's finding that plaintiff had a severe learning disorder and Dr. Smasal's observation that he was unable to do determine the number of nickels in $1.15. Dkt. # 15, at 13-14; Dkt. # 20, at 6-7.

Mathematical Development is another component of GED, which the DOT also scores on a scale of one to six. A job requiring level-one mathematical development requires the capacity to "[a]dd and subtract two-digit numbers," "[m]ultiply and divide 10's and 100's by 2, 3, 4, 5," "[p]erform the four basic arithmetic operations with coins as parts of a dollar," and "[p]erform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound." DOT App'x C, § III, 1991 WL 688702. Here, the ALJ did not include any specific limitation regarding plaintiff's mathematical abilities, so the ALJ's RFC finding could not have precluded any jobs based on the Mathematical Development score assigned to them by the DOT.

Plaintiff's argument seems to be that the ALJ erred by not including a mathematical limitation in his hypothetical. This effort, which is really an attack on the ALJ's RFC determination, is fruitless as it merely asks the Court to cherry pick evidence in his favor. While it is true that Dr. Smasal noted plaintiff's failure to correctly identify the number of nickels in $1.15, she ultimately concluded that his intellectual ability fell within normal limits. Because plaintiff's argument is merely an invitation to reweigh the evidence, the argument fails.

Finally, plaintiff argues that the ALJ erred in finding that 92,000 jobs in the national economy was a "significant number" such that plaintiff could transition to "other work" despite the limitations caused by his impairment. Dkt. # 20 at 7. The Tenth Circuit has steadfastly declined to draw a bright line rule regarding what constitutes "significant numbers" for the purposes of an ALJ's finding at step five. See Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992). The

evaluation of numerical significance "entails many fact-specific considerations requiring individualized evaluation" and "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." Allen v. Barnhart, 357 F.3d 1140, 1144 (10th Cir. 2004). Plaintiff has given the Court no reason to disturb the ALJ's finding in this case.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 19) is **accepted**, and the Commissioner's decision denying benefits is **affirmed**.  A separate judgment is entered herewith.

**DATED** this 6th day of August, 2021.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE